UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 06-CV-192-JMH

JAMES HOBART VAN OVER                                                    PLAINTIFF

VS:                              **<u>MEMORANDUM OPINION AND ORDER</u>**

STEPHEN DEWALT, ET AL.                                              DEFENDANTS

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

James Hobart Van Over ("Van Over"), a prisoner incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), filed this *pro se* civil rights action under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and other federal law [Record No. 2].  In his complaint, Van Over alleges that each of the defendants has violated his common law, statutory, and constitutional rights by failing to provide adequate medical care by ensuring his placement on the list for a heart transplant.

## BACKGROUND

On July 10, 2001, pursuant to a written plea agreement, Van Over pled guilty to one count of conspiring to possess with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. §§841(a), (b), 846.  On December 5, 2001, he was sentenced to an 85-month term of incarceration to be followed by a five-year term of supervised release.  *United States v. Van Over*, 01-CR-123-1, Southern District of Texas [Record Nos. 62, 120 therein].  Van Over is scheduled to be released from BOP custody on May 27, 2007.

Prior to his arrest on March 25, 2001, Van Over had been placed on the University of Kentucky Medical Center ("UKMC")'s heart transplant list ("HTL").  Van Over alleges that he had

been scheduled for an appointment at UKMC in April 2001, but that his wife called to cancel the appointment in March because of his arrest on the federal drug charges. Van Over alleges that the nurse told his wife that he would be removed from the HTL until he was no longer incarcerated.

Van Over arrived at FMC-Lexington in April 2002. FMC-Lexington provides certain health care services directly to its residents, but certain specialized medical needs, including cardiologic care, are provided by private contract physicians or health care organizations. UKMC and/or Gill Heart Center staff provide cardiologic care services to FMC-Lexington inmates pursuant to a contractual arrangement between UKMC and the Bureau of Prisons ("BOP"). On October 31, 2003, and November 21, 2003, Van Over was examined by Dr. Booth, who determined that Van Over needed a heart transplant and, without one, would have only a 50% chance of living another year. Van Over alleges, however, that Dr. Booth reiterated in subsequent conversations that Van Over's status as an inmate would prevent his placement on the HTL.

While the medical staff at FMC-Lexington, including Clinical Director Dr. Growse, agree that Van Over needs a heart transplant, he has not been provided one because the prison has been unable to reach an agreement with a health care provider to perform the surgery. This appears to be so because FMC-Lexington has been unable to arrive at terms with any potential contractor that adequately addresses both the provider's medical concerns and the prison's security concerns. UKMC, for instance, has declined to agree to provide such services because, at least in part, FMC-Lexington cannot guarantee adequate pre- and post-operative care for its residents by ensuring they will be able to attend all appointments with outside physicians and by maintaining a sterile or sufficiently sanitary environment for the patient at the prison.

On June 21, 2004, Van Over and another inmate, represented by counsel, filed in this Court a petition for habeas corpus under 28 U.S.C. §2241 seeking compassionate release on the basis of

2

their respective medical conditions and asserting, in the alternative, a civil rights claim for "deliberate indifference" to their serious medical needs in violation of the Eighth Amendment's prohibition against "cruel and unusual punishments."  In that petition, Van Over first stated his allegations that he had been removed from the HTL in April 2001 and that during an August 2002 appointment, Dr. Booth informed him that he was ineligible to be placed on the HTL because he was an inmate.  Petitioners subsequently withdrew that aspect of their pleading asserting civil rights claims, leaving only their habeas corpus petition.  While Dr. Booth was initially named as a defendant in that action, he successfully moved to be dismissed as a party because the petition asserted no claim against him.  The warden's response challenged the petitioners' allegations as administratively unexhausted, procedurally improper, and substantively meritless.

On December 6, 2004, the Court entered its memorandum opinion dismissing the petition. The decision noted that the petition was subject to dismissal without prejudice because petitioners had failed to exhaust their administrative remedies.  The Court dismissed the petition with prejudice on the merits, however, holding that the BOP's discretion to seek compassionate release from the trial court is not subject to review by the courts, and that petitioners had failed to show deliberate indifference to their serious medical needs in violation of the Eighth Amendment.  No appeal was taken from that judgment. *Hudnall v. Booker*, 04-278-JBC, Eastern District of Kentucky [Record Nos. 1, 4, 5, 7, 11, 14, 15 therein].

Notwithstanding the Court's rejection of not only Van Over's efforts to obtain early compassionate release, but also any suggestion the Eighth Amendment was violated as well, Van Over commenced the process of administratively exhausting the Eighth Amendment claims he had voluntarily dismissed in the prior action.  On July 28, 2005, he filed his BP-229 grievance form with the warden, alleging that BOP staff were deliberately indifferent to his medical needs because they

3

"refuse[d] to make me available to receive a heart transplant within the required time frame." Noting that Dr. Growse had continued to discuss the possibility of a heart transplant with UKMC medical staff in early 2005, the warden denied that grievance on September 7, 2005. Van Over appealed that determination by filing a form BP-230 with the BOP's Mid-Atlantic Regional Office on September 11, 2005. That appeal was denied on October 24, 2005, with the Regional Director describing the results of physical examinations of Van Over during the first half of 2005 as unexceptional and not warranting any change in his treatment regimen. Van Over appealed by filing his Form BP-231 with the BOP Central Office of Inmate Appeals on November 11, 2005. The Administrator denied the appeal on March 21, 2006, noting the BOP's continued assessment and care of Van Over's medical condition and the BOP's nationwide inability to successfully contract with an outside provider for comprehensive transplant services.

On June 13, 2006, Van Over filed his complaint in the present action against defendants Warden Stephen Dewalt, Clinical Director Dr. Michael Growse, and the BOP (collectively the "FMC Defendants"), as well as UKMC Dr. David Booth; UKMC; the Gill Heart Center; UKMC Director Robert Mentzer; Gill Heart Center Director Tyler Gill; and Gill Heart Center Director Victor Ferraris (collectively the "UKMC Defendants"). In his complaint, Van Over describes the same, ongoing course of conduct by FMC-Lexington and UKMC physicians which began in 2002 and continues to date with respect to attempting to place him on the HTL. As possible sources for his claims against the defendants, Van Over identifies the Eighth Amendment's prohibition against "cruel and unusual punishments," common law negligence, 42 U.S.C. §§1985, 1986 for civil rights conspiracy claims, the Americans with Disabilities Act, 42 U.S.C. §12132 ("ADA"), and the Rehabilitation Act, 29 U.S.C. §794. Van Over also appears to argue that one or more of the defendants, by allegedly being dishonest or misleading in their responses to his administrative

grievances, independently violated his Due Process rights.   Van Over seeks declaratory and injunctive relief, as well as substantial compensatory and punitive damages.

On October 13, 2006, Van Over moved to amend his complaint [Record No. 43].   In the tendered Amended Complaint, Van Over expressly abandons any claims against the Gill Heart Center, Tyler Gill, and Victor Ferraris, and asks that they be dismissed as defendants, but adds Dr. Angel Cordero of FMC-Lexington and Warden Joe Booker as defendants.   Van Over's amended complaint adds a claim that his right to equal protection under the law was violated when he was removed from the HTL solely because of his status as an inmate.

**DISCUSSION**

**1.   Discovery Motions**

On September 11, 2006, before he filed an answer, Defendant Growse filed a motion seeking a protective order [Record No. 30] to relieve him from any obligation to respond to interrogatories and document requests propounded by Van Over on September 5, 2006 [Record Nos. 26, 27]. Growse alleged that he would raise the defense of qualified immunity as part of any responsive pleading, and noted the Supreme Court's admonition that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982); *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998).   In his response [Record No. 40], Van Over acknowledges the propriety of a protective order under the circumstances pending resolution of the qualified immunity issue.   The Court will accordingly grant Dr. Growse's motion.

On September 29, 2006, Van Over filed a motion to compel [Record No. 39] the FMC Defendants to provide him with copies of any documents subject to the Privacy Act, 5 U.S.C. §552(a), which they had already or intended in the future to provide to the Court or any other party pursuant to the Court's Order authorizing such disclosure for purposes of this litigation [Record No.

5

31].  In their response [Record No. 41], the FMC Defendants noted that any such information filed with the Court would have to be served upon the plaintiff in compliance with Federal Rule of Civil Procedure 5.  With respect to any other documents provided to other parties or to be filed in the future, such documents can be obtained by the plaintiff pursuant to ordinary discovery procedures and in accordance with any pretrial scheduling order.  Plaintiff's motion will be denied.

On February 13, 2007, Van Over filed a motion to compel the FMC Defendants to provide him with the personnel files of Defendants Growse, Dewalt, and/or Cordero pursuant to 5 U.S.C. §552(a)(b)(11) [Record No. 68].  In particular, Van Over sought the files to obtain information regarding complaints any others may have had against these individuals with respect to the medical care provided to them.  In their response [Record No 69], the FMC Defendants correctly concluded that it appears Van Over seeks the information pursuant to the Privacy Act under 5 U.S.C. §552a(b)(11), rather than under the Freedom of Information Act, 5 U.S.C. §552.  The Privacy Act creates a general rule that an agency must not disclose information covered thereby; the subsection cited by Van Over provides an exception where such disclosure is ordered by a court.  *See* 5 U.S.C. §552a(b) and (b)(11).  The cited subsection does not affirmatively create a right to disclosure; it merely authorizes the agency to disclose information when ordered by a court pursuant to another source of affirmative authority for the disclosure.  Such authority in this case would derive from the discovery procedures outlined in the Federal Rules of Civil Procedure.  As previously noted, discovery may not proceed at this juncture where the FMC Defendants have filed a motion to dismiss and have asserted qualified immunity as a defense to the plaintiff's claims.  Accordingly, the motion to compel will be denied.

2.      **Van Over's Motion to Appoint Counsel.**

On September 29, 2006, Van Over filed a motion requesting that counsel be appointed to represent him in these proceedings [Record No. 38], citing the legal complexities presented by the case.  28 U.S.C. §1915(e) authorizes the court to appoint counsel in certain circumstances.  In determining whether to appoint counsel for an indigent plaintiff, the Sixth Circuit has explained,

> Appointment of counsel in a civil case is not a constitutional right.  It is a privilege that is justified only by exceptional circumstances.  In determining whether exceptional circumstances exist, courts have examined the type of case and the abilities of the plaintiff to represent himself.  This generally involves a determination of the complexity of the factual and legal issues.

*Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993).  The trial court exercises its discretion in evaluating these factors, and its decision will be reversed "only when the denial of counsel results in 'fundamental unfairness impinging on due process rights.'"  *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) (citations omitted).

Van Over has filed numerous memoranda which cite and discuss relevant authority and has propounded discovery requests in this case.  Courts in the Sixth Circuit do not appoint counsel for indigent and *pro se* prisoners in civil cases absent truly extraordinary circumstances.  *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996).  The Court finds no exceptional circumstances in this case that would warrant the appointment of counsel, and Plaintiff's motion will be denied.

3.      **Motions to Dismiss by UKMC and FMC Defendants**

      A.      <u>**Van Over's "Memorandum of Law in Opposition to the Amended Motion to Dismiss" will be stricken as an impermissible sur-reply.**</u>

The UKMC Defendants filed their Motion to Dismiss [Record No. 7] on August 4, 2006.  Van Over then filed his response [Record No. 19] on August 23, 2006, and the UKMC Defendants

filed their reply [Record No. 25] on August 31, 2006. The matter stood submitted for decision by the Court at that point.

Defendant Tyler Gill, however, had failed to note that in joining the motion to dismiss, he appeared only specially in an effort to preserve his objections to the sufficiency of process and service of process. Accordingly, on August 23, 2006, he moved to amend the motion to note this reservation of rights for the record; the amended motion contained no other revisions [Record No. 18]. The Court granted the motion [Record No. 23].

On September 26, 2006, Van Over filed a "Memorandum of Law in Opposition to the Amended Motion to Dismiss" [Record No. 35]. Van Over did not request leave of Court to file his memorandum. In addition, the memorandum did not address the sole new issue raised by the amended motion to dismiss, the sufficiency of process and service of process on Gill, but discussed at length matters covered in the UKMC's Defendants' reply brief in further support of their original motion to dismiss. The UKMC Defendants have filed a motion to strike that "response" as a "sur-reply" not authorized by L.R. 7.1 [Record No. 36]. Van Over has not filed a response to that motion.

The Court agrees that Van Over's second "response" constitutes an impermissible sur-reply. The document does not address any matter newly raised in the amended motion to dismiss, but instead attempts to respond to arguments presented in the UKMC Defendants' reply by recharacterizing both his arguments and his claims. Van Over did not seek leave of the Court under L.R. 7.1 to file it, now would such leave have been granted had it been sought. In addition, even if Van Over's response could be considered appropriately directed to the amended motion to dismiss, L.R. 7.1(c) requires any response to be filed within 15 days. The amended motion to dismiss was filed into the record on August 29, 2006, but Van Over did not deposit his purported response into the prison mail system until September 25, 2006, well past the 15-day period. The Court will

8

therefore not consider the arguments raised by Van Over in his second "response," and the Clerk of the Court will be directed to strike the document [Record No. 35] from the record.

### B. Van Over's motion to amend his complaint.

On October 13, 2006, after the defendants' motions to dismiss had been fully briefed and were submitted for decision, Van Over filed a motion to amend his complaint [Record No. 43]. The tendered Amended Complaint abandons any claims against the Gill Heart Center, Tyler Gill, and Victor Ferraris, and asks that they be dismissed as defendants, but adds Dr. Angel Cordero of FMC-Lexington and Warden Joe Booker as defendants. Van Over also asserts that his rights under the Equal Protection Clause were violated because he was removed from the HTL in 2001 solely because he was an inmate.

In their opposition to his motion to file an amended complaint, the UKMC and FMC Defendants assert that the motion should be denied because the proposed amendments would be futile [Record Nos. 44, 63]. The tendered Amended Complaint adds only one new claim, that Defendants violated his equal protection rights when they removed him from the HTL upon his incarceration. The UKMC Defendants assert that this claim is barred by the statute of limitations and fails to assert a viable equal protection claim.

The Court should freely grant leave to file an amended complaint before a responsive pleading has been filed. Fed.R.Civ.P. 15(a). However, such leave should be denied where the amendment would be futile, such as where the material or claims to be added remain subject to dismissal for failure to state a claim. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). In addition, because Van Over is proceeding *in forma pauperis* in this action pursuant to 28 U.S.C. §1915, and seeks relief against a governmental agency and/or its officers, federal law

9

requires the Court to dismiss a claim at any time if it determines that the claim is frivolous or fails to state a claim.  28 U.S.C. §1915(e)(2); 28 U.S.C. §1915A.

Because the new claim asserted in the tendered Amended Complaint is subject to dismissal, Van Over's request to amend his complaint will be denied as futile.  Van Over alleges that the defendants violated his constitutional rights when they removed him from the HTL upon his arrest in 2001.  Van Over's claim therefore accrued in April 2001.  *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991) (courts look for the event that should alert a typical lay person to protect his or her rights).  Because Section 1983 does not provide its own statute of limitations, federal courts "borrow" the most analogous statute of limitations from the state where the events giving rise to the claim occurred.  42 U.S.C. §1988(a); *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985).  Kentucky law accordingly supplies the applicable statute.  *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).  The one-year statute of limitations in KRS 413.140(1)(a) is the applicable statute for civil rights claims. *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).  Because more than one year passed after Van Over's claim accrued in 2001 before he filed the present complaint, his constitutional claims regarding removal from the HTL are time-barred.

The Court further agrees that Van Over's equal protection claim must fail as a matter of law.  The claims against UKMC, the Gill Heart Center, and the official capacity claims, which are in effect claims against UKMC and/or the Gill Heart Center, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), are barred by the Eleventh Amendment to the extent they seeks monetary damages, *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003), and because as arms of the state, *Withers v. Univ. of Kentucky*, Ky., 939 S.W.2d 340, 343 (1997), these defendants are not "persons" subject to liability under Section 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989).

10

With respect to the individual-capacity claims, Van Over alleges that the UKMC Defendants discriminated against him because he was a prisoner.  Van Over acknowledges that this categorization is not a suspect class entitled to any heightened scrutiny.  *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  Accordingly, the UKMC Defendants' actions must be sustained if they bear a rational relationship to a legitimate government interest.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439-40 (1985).  At the time of his removal from the HTL in 2001, Van Over was incarcerated in Texas, not in Kentucky, and hence he failed to satisfy the requirement that he be located within two hours of the transplant facility.  This requirement exists to ensure that once a heart becomes available for transplant, the intended recipient can be available for the surgery quickly during the relatively brief time period during which the heart remains viable for transplant.  Van Over's inability to make appointments in Kentucky because of his incarceration in Texas is an unquestionably rational reason for his removal from the HTL, and therefore his equal protection claim fails as a matter of law.

Because Van Over's motion to amend his complaint has been denied, his original complaint controls the scope and nature of his claims.  Accordingly, his claims against the Gill Heart Center; Tyler Gill, and Victor Ferraris remain.

**C.     Motions to Dismiss by the UKMC and FMC Defendants.**

The UKMC Defendants and the FMC Defendants have filed separate motions to dismiss Van Over's complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted [Record Nos. 7, 24, 33].  However, because the parties have submitted and the Court has not excluded materials outside the face of the complaint, the motion to dismiss must be evaluated as one for summary judgment.  Fed.R.Civ.P. 12(b); *Mays v. Buckeye Rural Elec. Co-op, Inc.*, 277 F.3d 873, 877 (6th Cir. 2002) (district court may properly consider motion to dismiss as one for

11

summary judgment when invited to consider matters outside the pleadings); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (where defendant moves both to dismiss and for summary judgment, plaintiff is on notice that summary judgment is being requested, and the court's consideration as such is appropriate where the nonmovant submits documents and affidavits in opposition to summary judgment).

Federal Rule of Civil Procedure 56 provides both the mechanism and the standard for summary adjudication of claims prior to trial. It provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992). The rule, by its terms, requires a determination of what the applicable law requires and an assessment of the facts presented by the parties. The Court must examine the facts alleged by the movant and nonmovant, and in light of the law applicable to the nonmovant's claim, determine if the movant is entitled to judgment as a matter of law because the nonmovant has failed to present sufficient evidence to sustain a jury verdict in his favor with respect to at least one essential element of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

The Court will evaluate each of Van Over's claims under this standard.

1.      **Claims under the ADA and the Rehabilitation Act.**

The operative provision of the ADA provides that:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. §12132. The language of the Rehabilitation Act is functionally identical. *See* 29 U.S.C. §794(a). To state a claim under the ADA, a plaintiff must allege that he or she (1) is a "qualified individual with a disability"; (2) was "excluded from participation" in "the services, programs, or activities" of a "public entity"; and (3) was excluded "by reason of such disability." *Weinreich v. Los Angeles County Metro. Trans. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). A claim under the Rehabilitation Act requires these three elements and an allegation that the program or activity receives federal funds. *Burns v. City of Columbus, Ohio*, 91 F.3d 836, 841 (6th Cir. 1996).

The ADA only proscribes discrimination by a "public entity," which is defined as a state or local government or agency thereof. 42 U.S.C. §12131(A), (B). Accordingly, the ADA does not apply to federal prisons or federal entities, *Crowder v. True*, 1993 WL 532455, *5 (N.D. Ill. 1993) (unpublished disposition), *aff'd*, 74 F.3d 812 (7th Cir. 1995), or to individuals, *Miller v. King*, 384 F.3d 1248, 1276 (11th Cir. 2004) ("the plain language of the statute applies only to public entities, and not to individuals.... the natural meaning of §12132 is that liability extends only to public entities and not to persons in their individual capacities."), but it does apply to state prisons and agencies. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). Van Over's ADA claims must therefore be dismissed against all defendants except UKMC and the Gill Heart Center.

Similarly, the Rehabilitation Act only prohibits discrimination in "any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency..." 29 U.S.C. §794(a). Van Over alleges that UKMC and the Gill Heart Center receive state,

13

not federal, funding, and the Rehabilitation Act likewise does not apply to individual defendants. *Stevenson v. Ind. School Dist. No. I-038 of Garvin Co., Oklahoma*, 393 F.Supp.2d 1148, 1151-52 (W.D.Okla. 2005). Van Over's Rehabilitation Act claims must therefore be dismissed against all defendants except the BOP.

Nonetheless, both types of claims must be dismissed because Van Over has not alleged that he is a "qualified person with a disability." Even liberally construing his complaint to include an allegation that he is disabled, the Court would conclude that he fails to satisfy that definition as a matter of law. The ADA and the Rehabilitation Act define "disability" in nearly-identical terms as a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. §12102(2); 29 U.S.C. §705(20). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. §1630.2(I). Van Over has not alleged any impairment of his day-to-day functioning, only that the failure to place him on the HTL will someday result in his death. Such allegations are insufficient to meet the definition of a disability as a matter of law.

Finally, both of these claims fail because Van Over has affirmatively alleged that any discrimination against him was based upon his status as an inmate, not because of any disability. To state a claim under these statutes, a plaintiff "must allege either that they are or are perceived to be handicapped within the definitions of each of the acts, that they are otherwise qualified for the job, and that they were discriminated against on the basis of their disability." *Andrews v. State of Ohio,* 104 F.3d 803, 807 (6th Cir. 1997); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 277-79 (2nd Cir. 2003) (ADA plaintiff must show that her exclusion from benefits occurred "by reason of such disability" by demonstrating that disability was a "substantial cause" of the exclusion). Because Van Over's allegations preclude such an assertion, these claims will be dismissed with prejudice.

14

2.        **Claims under 42 U.S.C. §§1985, 1986.**

42 U.S.C. §1985(3) creates a cause of action against a person who conspires with another to deprive a person of their right to equal protection under the law, and 42 U.S.C. §1986 creates a cause of action against a person who knows of and has the power to prevent a violation of Section 1985 but fails to do so.   Van Over asserts claims under both of these federal laws against the defendants.

These claims must be dismissed for a number of reasons.   First, Van Over failed to administratively exhaust these claims prior to bringing suit.   Federal law requires a prisoner to administratively exhaust a claim brought pursuant to Section 1983 or any other federal law prior to bringing suit. 28 U.S.C. §1997e(a).  A review of the grievances filed by Van Over demonstrates that he has exhausted his deliberate indifference claims, but none of those grievances expressly state or imply any type of conspiracy or failure to report claim.   Ordinarily, such a dismissal would be without prejudice.   However, the Supreme Court has made clear that to satisfy the exhaustion requirement the prisoner must exhaust his remedies within the manner and time allowed by the applicable regulations.   Under the applicable BOP regulations, a grievance must be commenced within 20 days after the event giving rise to the grievance.   28 C.F.R. §542.14(a).   Since that time has long since passed, Van Over cannot timely exhaust his administrative remedies, and this claim must be dismissed with prejudice.   *Woodford v. Ngo*, 126 S.Ct. 2378, 2387-88 (2006).

Second, these claims are time-barred.   Claims under Section 1985, like claims under Section 1983, are governed by Kentucky's one-year statute of limitations.   Section 1986 provides its own one-year limitations period.   The events which should have alerted Van Over to protect his rights occurred on or shortly after October 31 or November 21, 2003, when Dr. Booth allegedly advised him that he would not be permitted placement on the HTL because he was an inmate.   In addition,

15

Van Over was aware of the factual basis for such a conspiracy claim when he filed suit on June 21, 2004, asserting claims relating to the failure of the FMC and UKMC Defendants to have him placed on the HTL.  Yet, Van Over waited until June 13, 2006, to file his complaint in this action.  Because more than one year passed after Van Over's conspiracy claim accrued before he filed the present complaint, those claims are time-barred.

Finally, the allegations in the complaint are fatally insufficient to state a claim under either statute.  A claim of civil rights conspiracy under Section 1985 must allege some form of race or other class-based animus.  *Justice v. Coughlin*, 941 F.Supp. 1312, 1326 (N.D.N.Y. 1996); *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 835-37 (1983) (conspiracy must be motivated by racial or related class-based discriminatory animus).  Van Over's claim of discrimination is based upon his status as an inmate, and is hence outside the scope of protection offered by Section 1985. *Stuck v. Aikens*, 760 F.Supp. 740, 746 (N.D.Ind. 1991) (inmate's claim of discrimination, unsupported by claim of membership in racially protected group, failed to state claim of invidious discrimination under §§1985, 1986).

Further, to state a claim under Section 1985 for conspiracy, the plaintiff must plead more than vague and conclusory allegations of conspiracy unsupported by material facts, *Sharp v. Rainey*, 910 F.Supp. 394, 395 (E.D.Tenn. 1996).  For example, a plaintiff's bare allegation that defendants conspired to deprive her of her constitutional rights was held insufficiently pled to state a claim sufficient to withstand a motion to dismiss.  *Perry v. Gold & Laine, P.C.*, 371 F.Supp.2d 622, 626-27 (D.N.J. 2005).  Van Over has offered only the bare assertion that the defendants conspired to violate his civil rights without offering any factual support to particularize this claim, and his civil rights conspiracy claim under Section 1985 must therefore fail as a matter of law.  In turn, absent a viable Section 1985 claim, there can be no viable claim under Section 1986 for failure to prevent

16

a civil rights conspiracy violation. *Bieros v. Nicola*, 839 F.Supp. 332, 336 (E.D.Pa. 1993). It must therefore be dismissed as well.

### 3. Due Process Clause

Van Over appears to contend in his complaint that Dr. Growse and/or the BOP violated his due process rights by failing to respond to his administrative remedies truthfully and in a timely manner. Complaint ¶60. This alleged constitutional violation is one entirely distinct from the underlying claim relating to Van Over's placement on the HTL. The facts giving rise to this claim are different from and occurred at a different time than the conduct relating to the HTL. While Van Over administratively exhausted his primary deliberate indifference claim between August 2005 and March 2006, he never filed a grievance regarding this claim. Having failed to do so, it is administratively unexhausted and is further no longer capable of being properly exhausted. Accordingly, it must be dismissed with prejudice under Section 1997e(a). *Woodford v. Ngo*, 126 S.Ct. 2378, 2387-88 (2006).

In addition, the BOP regulations governing prison grievances authorize the BOP to grant itself an extension of time to respond to a grievance and to reject a grievance on procedural grounds. 28 C.F.R. §542.10-.18. And while Van Over may disagree with the medical facts or opinions set forth in the responses to his grievances, those statements are grounded in BOP medical records and information offered by his treating physicians. Merely reiterating such information from relevant BOP records does not constitute conduct that "shocks the conscience" as a matter of law, *United States v. Salerno*, 481 U.S. 739, 746 (1987), and Van Over's substantive due process claim must therefore be dismissed.

17

4.      **Equal Protection Clause.**

Van Over's primary claim against the UKMC Defendants is that their failure to reinstate him to the HTL solely because of his status as an inmate violates his right to equal protection under the law.  Van Over does not make this allegation against the FMC Defendants.

This claim must fail for reasons substantially identical to those set forth above with respect to his equal protection claim arising out of his removal from the HTL in the first instance.  Van Over has been actually aware of the alleged discrimination against him based upon his status as an inmate since at least his 2003 meeting with Dr. Booth, *Dixon*, 928 F.2d at 215, and therefore his equal protection claim is time-barred.  KRS 413.140(1)(a); *Collard*, 896 F.2d at 182.  *Even if it were not,* the UKMC, Gill Heart Center, and official-capacity claims are not claims against "persons" subject to liability under Section 1983.  *Will*, 491 U.S. at 65-66.  The remaining individual-capacity claims must fail as a matter of law.  While Van Over was now incarcerated in Lexington close to UKMC facilities, the UKMC physicians articulated several rational concerns regarding their ability to provide adequate pre- and post-operative medical care to a prisoner.  The Court is not authorized to second-guess the sufficiency of such articulated reasons so long as they are plausible under the circumstances.  The actions of Dr. Booth and others in declining to return Van Over to the HTL plainly bear a rational relationship to a legitimate government interest, *City of Cleburne*, 473 U.S. at 439, and must be sustained.

5.      **Common Law Negligence.**

In their motion to dismiss, the UKMC Defendants note that Van Over's complaint lists common law negligence as one theory under which he might seek recovery, but indicate their uncertainty regarding whether Van Over actually intends to pursue a claim against them for negligence under Kentucky law. To the extent he wishes to do so, these defendants question what,

18

if any, duty they could owe to him with respect to placement on the HTL, and note the speculative nature of any injury given that placement on the HTL in no way ensures that Van Over would actually be the beneficiary of a heart for transplant [Record Nos. 7, 8].

In his response to their motion [Record No. 19], Van Over expressly disavows any intent to pursue a claim against the UKMC Defendants based upon "deliberate indifference" under the Eighth Amendment, Response at pgs. 3, 11-12, instead stressing the nature of his claim as one challenging discrimination in violation of the Equal Protection Clause.  With respect to any negligence claim, Van Over states "... the Plaintiff does not allege these Defendants to have any direct decision or function that has anything to do with the level or type of medical care the Plaintiff receives.  This is the sole responsibility of the 'Prison Defendants.' ... The Plaintiff is not alleging mere negligence.  The actions of discrimination are deliberate, they are not accidentally contrived."  Response at 3, 13-14.

Plaintiff's memorandum in response  to the UKMC Defendants' motion to dismiss makes no substantive argument in support of his negligence claim, and any negligence claim would be susceptible to dismissal on this basis alone.  Fed.R.Civ.P. 56(e) ("If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."); *Byrd v. Brandeburg*, 922 F.Supp. 60, 62 (N.D.Ohio 1996); L.R. 7.1.  Further, the arguments and statements Van Over makes in his response brief appear to disavow any claim based on negligence or medical malpractice, acknowledging that FMC-Lexington and its staff are the parties responsible for meeting his medical needs.  Finally, even if Van Over's complaint set forth the elements of a negligence claim against these defendants, the Court would dismiss such a claim as frivolous under 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915A.  Van Over expressly indicates that he does not challenge the adequacy of any medical care provided to him by the UKMC Defendants.  Rather, the conduct he

19

challenges is their decision to remove him from the HTL because of his incarceration.  Simply put, this is not a claim of medical malpractice.  Nothing suggests that the UKMC Defendants were unwilling to provide Van Over medical care or place him on the HTL once an appropriate contractual arrangement with the BOP was arrived at to ensure adequate medical care, a circumstance entirely within the control of the BOP.  Until the BOP took the steps necessary to permit such a contractual arrangement to be made, no duty could arise with respect to the UKMC Defendants.  The UKMC Defendants are thus correct in their assertion that Van Over's complaint fails to allege violation of a duty owed to him, and this claim must be dismissed with prejudice.

> **6.** **Eighth Amendment Deliberate Indifference**.

The UKMC Defendants and the FMC Defendants both assert that any claim by Van Over that they displayed "deliberate indifference" to his serious medical needs under *Estelle v. Gamble*, 429 U.S. 97 (1976), are barred by the doctrine of issue preclusion, which prevents a party from relitigating an issue actually decided in prior litigation.  Because Van Over's Eighth Amendment claim was rejected in his prior habeas petition, the argument goes, he cannot re-assert it here. *Hickman v. Commissioner*, 183 F.3d 535, 537 (6th Cir. 1999).

The Court must disagree.  As a threshold matter, while habeas corpus petitions are generally referred to as civil in nature, they are far different from ordinary civil suits, and thus the effect to be given to them in subsequent proceedings is far from clear.  There is considerable debate regarding the scope, if any, of the preclusive effect to be given to claims asserted in prior habeas corpus petitions.  *Compare Kowalczyk v. Gilroy*, 994 F.Supp. 410, 414 (E.D.N.Y. 1994) (treating prior habeas proceeding as ordinary civil proceeding) with *Reed v. McKune*, 298 F.3d 946, 951 (10th Cir. 2002) ("under Kansas law the doctrine of res judicata does not preclude a § 1983 action for monetary damages when a prisoner's claims have previously been adjudicated in a state habeas

20

corpus proceeding because habeas corpus and § 1983 actions are premised on different wrongs. *See* [*Rhodes v. Hannigan*, 12 F.3d 989, 991 (10th Cir. 1993)] (noting that a petition for habeas corpus "attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement," while a civil rights action for damages pursuant to §1983 "attacks the conditions of the prisoner's confinement and requests monetary compensation for such conditions"; *see also Ingram v. Craven*, 2007 WL 576455 (D.Id. 2007) (unpublished disposition).

Second, even if Van Over's prior habeas proceeding was to be afforded the same treatment as a regular civil case, issue preclusion would not operate to bar his Eighth Amendment claim here. While Van Over initially asserted an Eighth Amendment claim in his prior petition, he voluntarily withdrew that claim prior to the Court's decision in response to the Court's Order noting that such a claim must ordinarily be presented in a civil rights complaint, not a habeas petition. In its final decision, the Court did conclude that the respondent did not violate his rights under the Eighth Amendment by displaying deliberate indifference to his serious medical needs. However, that conclusion was not necessary to its decision. A habeas corpus petition under Section 2241 may be used by a prisoner to challenge decisions affecting the manner in which his sentence is being carried out, such as the computation of sentence credits or parole eligibility. *United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1999). Claims regarding the conditions of confinement, such as the adequacy of medical care, are within the exclusive province of civil rights claims. *Sinde v. Gerlinski*, 252 F.Supp.2d 144, 149 (M.D.Pa. 2003) (federal inmate's claims relating to frequency of segregation review hearings did not challenge fact or duration of his confinement and thus could not be raised in Section 2241 habeas petition, but rather had to be raised by way of civil rights action); *Leamer v. Fauver*, 288 F.3d 532, 540-42 (3rd Cir. 2002). Because Van Over's "deliberate indifference" claim was not cognizable in a habeas corpus petition, any discussion of its merits was

21

not necessary to the Court's conclusions with respect to the reviewability of the BOP's determination regarding early compassionate release. Van Over's deliberate indifference claim is therefore not barred by the doctrine of issue preclusion.

As noted above, Van Over has clarified that he asserts Eighth Amendment claims solely against the FMC Defendants, not any of the UKMC Defendants. As for the FMC Defendants, the official capacity claims constitute a claim against the BOP. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Because federal agencies are clothed with sovereign immunity, a claim can only be sustained against them where such immunity has clearly been waived. *United States v. Mitchell*, 463 U.S. 206, 212-14 (1983); *The Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 115-16 (6th Cir. 1988). Therefore, a *Bivens* claim cannot be asserted against a federal agency, but only against a federal official in his or her individual capacity. *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Alkire v. Irving*, 330 F.3d 802, 810-11 (6th Cir. 2003).

A discussion of the individual capacity claims must begin with an understanding of the respective roles of the UKMC Defendants and FMC-Lexington Defendants with regard to Van Over's placement on the HTL. One or more of the UKMC Defendants has the power to place Van Over on the HTL, but none of them possess the ability to effect any change in BOP policy or the extent or quality of the facilities at FMC-Lexington. Conversely, the FMC-Lexington Defendants lack the authority to place Van Over on the HTL, but presumably possess some measure of authority to take steps necessary to pursue the changes to FMC-Lexington's facilities or regulations necessary to overcome the concerns stated by UKMC. None of the defendants have the power to ensure that Van Over would actually receive a heart transplant operation. The allegations in Van Over's complaint are consistent with this understanding; his claims against the FMC Defendants are based

22

upon their failure to take any and all steps necessary to ensure his placement by UKMC back on the HTL.

To establish a deliberate indifference claim under the Eighth Amendment, a prisoner must show that a prison official actually knows of a substantial risk to an inmate's health and knowingly fails to respond reasonably to that risk.  *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  The medical care does not have to be the best available--if some medical care is provided, there is no deliberate indifference so long as such care meets "minimal standards of adequacy."  *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991).

There is no question that the FMC Defendants were aware of Van Over's medical needs or that they took some steps to address them.  Van Over does not challenge the Defendants' assertion that he has been examined by a cardiologist  every 3 to 6 months to assess the condition of his heart. Nor does he assert that FMC-Lexington has done nothing to pursue a contractual arrangement with an outside provider for solid organ transplant services.  Van Over does challenge the FMC Defendants' assertion that they made efforts to look at facilities outside of Lexington as a fabrication, and contends that they were required to contact additional providers in Louisville, Cincinnati, or other nearby cities.  In sum, Van Over does not allege that the Defendants did nothing to address his medical needs; rather, he contends that they were constitutionally required to do more.

Even accepting his factual allegations as true, Van Over has failed to offer support for his claim of deliberate indifference sufficient to sustain a jury verdict in his favor.  *Celotex*, 477 U.S. at 322-23.  The FMC Defendants' efforts to address his medical needs must merely meet "minimal standards of decency" to satisfy the demands of the Eighth Amendment.  *Holmes*, 930 F.2d at 1199. While Van Over contends that FMC-Lexington was required to undertake a broader search for a transplant provider, he does not explain why having a provider in Louisville or Cincinnati would not

23

present additional security and logistical concerns because of its more distant location.  Nor is there any reason to suppose that such providers would not voice the same concerns articulated by UKMC. The FMC Defendants treated Van Over's medical condition by contracting with an outside provider, UKMC, with an excellent professional reputation and staffed with cardiac specialists.  The fact that such treatment may not have completely addressed all of his medical concerns is not a basis for imposing liability under the Eighth Amendment, *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995), even where the patient desires different or additional treatment.  *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996); *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994).

Even if Van Over's claims presented a closer question, the individual FMC Defendants would unquestionably be shielded by qualified immunity.  In the context of a deliberate indifference claim, the qualified immunity analysis essentially asks whether "a reasonable doctor in the same circumstances and possessing the same knowledge ... could have concluded that his actions were lawful, i.e., not deliberately indifferent to [the prisoner's medical needs]."  *Waldrop v. Evans*, 871 F.2d 1030, 1033-34 (11th Cir. 1989).  In this case, to find that the Defendants are not entitled to qualified immunity the Court would have to hold that there is no room for disagreement amongst officials of reasonable competence that the Eighth Amendment plainly required FMC to take all steps necessary, including improving its physical facilities and altering its regulations regarding transportation of inmates, to reach agreement with an outside health care provider for transplant services in order to treat Van Over's heart condition.  *Gean v. Hattaway*, 330 F.3d 758, 767-68 (6th Cir. 2003); *Watkins v. City of Southfield*, 221 F.3d 883, 889 (6th Cir. 2000).

This the Court cannot do.  While reaching such an agreement would doubtless benefit those like Van Over in need of an organ transplant, this does not mean that an official should know that failing to ensure such a high level of care violates the Constitution.  *Pray v. Sandusky*, 49 F.3d 1154,

24

1157 (6th Cir. 1995) ("... qualified immunity is appropriate ... [where] a 'reasonable' person in the defendant's position could have failed to appreciate [that the plaintiff's rights] would be violated by his conduct."). BOP officials, at FMC and elsewhere, were working towards reaching an agreement for organ transplant services but had not yet succeeded in that endeavor. Van Over's position is, in essence, that in light of his health condition, the Eighth Amendment required them to move more quickly and in disregard of ordinary institutional concerns for both quality patient care and institutional security in pursuit of that goal. The Court concludes that the Eighth Amendment requires no such reckless abandon. Because there is no evidence to suggest that Van Over's medical treatment was so far outside the boundaries of competent professional judgment that no reasonable medical professional could conclude that Van Over's medical treatment was constitutionally satisfactory, qualified immunity is appropriate. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'); *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003). Van Over's Eighth Amendment claims must therefore be dismissed with prejudice.

## CONCLUSION

1. Defendant Growse's Motion for a Protective Order [Record No. 30] is **GRANTED**.

2. Plaintiff's Motion to Compel Production of Privacy Act Information [Record No. 39] is **DENIED**.

3. Plaintiff's Motion to Compel Production of Personnel Files [Record No. 68] is **DENIED**.

4. UKMC Defendants' Motion to Strike [Record No. 36] is **GRANTED**.

5. Plaintiff's Motion for the Appointment of Counsel [Record No. 29] is **DENIED**.

6. Plaintiff's Motion to Amend his Complaint [Record No. 43] is **DENIED**.

7. Plaintiff's Motion for Leave to File a Sur-Reply [Record No. 62] is **GRANTED**.

25

8.    The Motion of Defendants UKMC, the Gill Heart Center, Dr. Robert Mentzer, Dr. David Booth, Director Tyler Gill, and Director Victor Ferraris to dismiss the complaint [Record No. 7] is **GRANTED.**

9.    The Motion of Defendants Warden Stephen Dewalt and Clinic Director Dr. Michael Growse  to dismiss the complaint [Record No. 33] is **GRANTED**.

10.   Plaintiff's Motion for Confirmation of Service of Summons on Defendant Robert Mentzer, M.D. [Record No. 60], is **DENIED AS MOOT**.

11.   Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

12.   The Court certifies that any appeal would not be taken in good faith.  28 U.S.C. §1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

13.   Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the defendants.

**IT IS SO ORDERED.**

Signed By:

**_Joseph M. Hood_**

**United States District Judge**